Edwin **MATHEWS**, Plaintiff,

v.

Joanne B. **BARNHART**, Commissioner of Social Security [1], Defendant.

No. 00–CV–6460L.

United States District Court,
W.D. New York.

Aug. 2, 2002.

---

William J. McDonald, Jr., Bond and McDonald, Geneva, NY, for plaintiff.

---

1. Plaintiff's complaint names former Commissioner of Social Security Kenneth S. Apfel. Joanne B. Barnhart, the current Commissioner, is automatically substituted as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Brian M. McCarthy, AUSA, Rochester, NY, for defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Edwin Mathews ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to benefits. The Commissioner and plaintiff both now move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). As discussed below, the Commissioner's decision is reversed, and this matter is remanded for further findings consistent with this opinion.

## BACKGROUND

Edwin Mathews was born on March 31, 1951. (Tr. 52.)[2] He completed ninth grade and has not obtained a GED. (Tr. 367.) His previous work experience includes work as a windshield installer (Tr. 81, 82), a foundry worker (Tr. 91), a mold maker (Tr. 187), a maintenance worker (Tr. 188) and a sider (*Id.*). This work generally required him to stand eight hours per day, and bend occasionally to frequently. (Tr. 81, 82.) He applied for Supplemental Security Income benefits on March 29, 1995, alleging that his low back pain and cardiac condition were totally disabling. (Tr. 52.) His application was denied initially and on reconsideration. (Tr. 60–63, 75–78.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on June 5, 1996. The ALJ determined that plaintiff was not entitled to benefits and denied his claim. (Tr. 17–25.) The ALJ's decision

became the Commissioner's final decision on June 12, 1998, when the Appeals Council denied plaintiff's request for review. (Tr. 4–5.)

On June 25, 1998, the claimant commenced an action in this district seeking review of the Commissioner's final decision. By order dated June 29, 1999, the court remanded the matter to the Social Security Administration for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 439–444.) This matter was remanded because the Commissioner was unable to locate the tape of the June 5, 1996 hearing, and was thus unable to produce a transcript of the hearing proceedings. Another administrative hearing resulted in a decision dated July 17, 2000 again denying the plaintiff's claim. (Tr. 364–414, 344–357.) The plaintiff elected not to file exceptions with the Appeals Council, thus making the ALJ's decision the final position of the Commissioner pursuant to 20 C.F.R. § 404.984(d). Plaintiff then commenced this action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner's decision that plaintiff was ineligible to receive Supplemental Security Income benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126

---

**2.** "Tr.___" refers to the page of the transcript of the Administrative Record filed by the

Commissioner with her Answer.

(1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). Therefore, the Court must determine whether the ALJ adhered to the appropriate legal standards, and whether his determination that plaintiff was not disabled is supported by substantial evidence.

In determining whether the plaintiff was entitled to receive disability benefits, the ALJ proceeded through the required five-step inquiry. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999) (discussing the five-step process delineated in the relevant regulations); *see also* 20 C.F.R. § 416.920. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 8, 1995. (Tr. 353.) Next, the ALJ found that plaintiff suffered from multiple severe impairments, specifically a cardiac condition (S/P CABG surgery), several back impairments (spondylolysis L5, S/P Laminectomy/Discectomy L5–S1 with fusion and graft), and a borderline range of intellectual functioning. (*Id.*) The ALJ then found that these impairments did not meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) The ALJ proceeded to the fourth step and determined that plaintiff did not have the residual functional capacity ("RFC") to perform his past relevant work. (*Id.*)

At the fifth and final stage of this process, the burden shifts to the Commissioner "to determine whether there is other work which the claimant could perform." *Tejada v. Apfel*, 167 F.3d at 774. Relying on the testimony of a vocational expert, the ALJ determined that plaintiff was capable of performing other types of work. (Tr. 354.) Thus, the ALJ found that plain-tiff was not disabled under the Act. I find that the ALJ applied the appropriate legal standards in determining the plaintiff's disability status. The only question remaining before the Court is whether the ALJ's decision is supported by substantial evidence.

*There is Substantial Evidence Supporting the ALJ's RFC Finding*

■ Contrary to plaintiff's assertions, the opinions of his treating physicians cannot be given controlling weight. I concur with the ALJ's finding that plaintiff retained the RFC to perform sedentary work,[3] as it is supported by substantial evidence of record. (Tr. 353.)

"The medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also* 20 C.F.R. § 416.927(d)(2). However, where, as here, a treating physician's medical opinion is inconsistent with other substantial record evidence, it is not entitled to controlling weight. *See Id.* Plaintiff's treating physician, Roger Schenone, M.D., determined that plaintiff's abilities were severely limited in terms of standing, sitting, and walking as of November 17, 1999. (Tr. 609–610.) The ALJ noted that Dr. Schenone did not provide a medical explanation of these limitations or indicate whether they were based on objective findings or claimant's subjective comments. (Tr. 351.) The record indicates that Dr. Schenone's assessment is not supported by medical findings and is inconsistent with other record evidence. Nonetheless, the ALJ did give some weight to the opinion, noting that it supports a finding that limitations did exist. (*Id.*) The severe limitations sug-

---

**3.** Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a seden-tary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 416.967(a).

gested by Dr. Schenone are difficult to square with other medical testimony submitted after plaintiff's quadruple bypass on March 13, 1995, and his back surgery on November 6, 1997 (Tr. 262–265), which show that the severity of plaintiff's symptoms was greatly reduced following his two surgeries.

With regard to plaintiff's cardiac condition, plaintiff's treating cardiologist Dr. Greenwald noted that he could swim without difficulty less than two months after his heart surgery (Tr. 138), and could carry wood seventeen days after surgery. (Tr. 140.) Also, the plaintiff reported to Dr. Schenone that he had no chest pain as of June 3, 1996. (Tr. 464.) Finally, R.P.A. Thomas Coss, a member of Dr. Schenone's office, noted on December 6, 1996, that plaintiff no longer had chest discomfort. (Tr. 470.)

In terms of plaintiff's lumbar condition, his treating neurosurgeon Dr. Gaylon noted on November 18, 1997 that plaintiff was doing "exceptionally well" with excellent relief of his radiating pain. (Tr. 284.) Plaintiff's functional status was expected to improve. (*Id.*) On January 6, 1998, Dr. Gaylon noted that plaintiff was suffering minor discomfort from lifting wood. (Tr. 588.) As late as May 11, 1999, Dr. Gaylon also reported that plaintiff had no obvious limp or antalgia,[4] was minimally tender, had negative straight leg raises, and had good strength and sensation. (Tr. 586.) He also opined that plaintiff's X-rays showed a fairly stable appearance, that he was definitely better in terms of his pre-existing neurogenic condition, and that "not much else" could be done. (*Id.*) Contrary to his own assessment, even Dr. Schenone noted that as of February 19, 1998 plaintiff had "generally been feeling well," denied any chest pain, and had only "intermittent back discomfort." (Tr. 568.) On August 19, 1998, he referred plaintiff to Dr. Gaylon as he was complaining of "some" back pain. (Tr. 569.) Dr. Schenone remarked on August 17, 1999 that plaintiff had normal peripheral pulses in his upper and lower extremities. (Tr. 590.)

Plaintiff primarily relies on the evaluations of Drs. Schenone and Lamb, a physician's assistant ("PA"), Gonzalez, and a non-examining review physician from the Department of Social Services[5] to support the position that his RFC is below the requirements of sedentary work. As discussed above, Dr. Schenone's November 17, 1999 evaluation is not supported by the majority of the postoperative evidence, which indicates that plaintiff was much improved following his surgeries. In fact, Schenone's opinion runs counter to many treating opinions (including his own) that indicate plaintiff's overall condition was much improved following the two procedures.

Dr. Lamb's evaluation is equally unsupported. This evaluation was conducted on July 17, 1996, four months prior to his corrective back surgery and does not reflect the postoperative evidence within the record. (Tr. 234–237.) Similarly, the opinion of the reviewing physician from the Department of Social Services, like the evaluation of Dr. Lamb, was made several months prior to plaintiff's back surgery. (Tr. 563.) This physician's opinion that plaintiff was disabled does not find support in the postoperative evidence within the record.

Finally, the ALJ did not err in failing to credit PA Gonzalez's opinion. The ALJ

---

4.  The lowering of a previous elevation in pain threshold. *Stedman's Medical Dictionary,* 83 (5th ed.1982).

5.  Unfortunately, the signature of this particular physician is not discernable from the record.

rejected this opinion because he found no evidence in the record which indicated that Gonzalez had ever examined plaintiff prior to issuing his opinion. Plaintiff suggests that Gonzalez's medical entry indicating "pt. Seen to complete disability forms" indicates he was actually examined by Gonzalez. The ALJ's decisions addressed this record (Tr. 350), and found it unpersuasive. In any case, it is clear from the record that Gonzalez did not have a treatment relationship with the plaintiff and had not examined him at any time prior to opining that he was totally disabled and unable to perform sedentary work.

In total, the ALJ's decision to give limited weight to these opinions was appropriate. This Court concurs with the ALJ's determination concerning plaintiff's physical impairments and RFC. As discussed below, however, the ALJ improperly failed to consider all of plaintiff's non-exertional limitations before rendering his decision.

*The ALJ Erred in Applying the Medical–Vocational Guidelines*

■ The ALJ's determination that plaintiff was capable of performing the jobs of information clerk and surveillance systems technician is not supported by substantial evidence. Specifically, the ALJ erred by constructing hypothetical questions for the vocational expert that failed to include all of the plaintiff's non-exertional limitations. (Tr. 603–605.)

■ A vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). Hypothetical questions constructed to assist a vocational expert in determining whether there are any

employment possibilities for a claimant are defective where they do not account for his actual limitations. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir.1981); *see also Gilliam v. Califano*, 620 F.2d 691, 693–694 (8th Cir.1980). Vocational testimony elicited by hypothetical questions that fail to relate with precision to the physical and mental impairments of a claimant is not substantial evidence on which an ALJ may base a decision. *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir.1986).

Here, the ALJ advised the vocational expert to

> "assume that claimant has a borderline range of intellectual functioning (a verbal I.Q. of 75), demonstrating some difficulty in reading comprehension. Assume that claimant is able to read a newspaper, but has difficulty relating what was read due to difficulties with comprehension, can write a letter, can do at least simple multiplication and division, and added fractions while still in school. Assume that no job ended alleging any problem with claimant's intellectual level."

(Tr. 604.) The ALJ failed to indicate that, in addition to his low verbal I.Q. and comprehension difficulties, that plaintiff also had several other cognitive difficulties noted by psychologist Dr. Drew Arnold.[6] (Tr. 213–216.) Without a complete picture of plaintiff's cognitive abilities, the vocational expert could not be expected to accurately determine whether plaintiff could engage in certain vocations.

At the administrative hearing the vocational expert testified that, based on his review of the psychological evaluation completed by Dr. Arnold, the limitations listed in the evaluation might preclude plaintiff's

---

**6.** Dr. Arnold reported that in addition to cognitive functioning in the range of borderline mental retardation, specific difficulties with verbal reasoning, reading comprehension and

reading related skills suggested that plaintiff also had a learning disorder. This report is uncontradicted, as it is the only psychological assessment within the record.

ability to perform the jobs he had found. The Eighth Circuit, in *Gilliam v. Califano*, 620 F.2d at 693, addressed a similar situation:

> The fatal defect in such a hypothetical question is well illustrated here by the discrepancy between the vocational expert's answer to the ALJ's hypothetical question and his answer to the hypothetical question by Gilliam's counsel. When Gilliam's counsel posed a hypothetical question setting out in detail the functional restrictions reported by Gilliam, the vocational expert readily answered that it would be impossible for Gilliam to hold any kind of job.

Like the expert in *Gilliam*, the vocational expert here altered his evaluation when presented with plaintiff's psychological assessment detailing his impairments. The vocational expert testified that based on his brief review of the psychological assessment, it appeared that plaintiff's non-exertional limitations might preclude the ability to perform the two jobs cited in direct testimony. (Tr. 402.) As the vocational expert was not able to consider all of the plaintiff's psychological deficiencies before making his determination, I find that his testimony that the plaintiff could perform the jobs of information clerk or surveillance system monitor technician is not substantial evidence on which an ALJ may make a finding of non-disability. As such, remand to the Commissioner for further vocational testimony is appropriate. The delay that such a remand entails is indeed unfortunate, but until the record is clarified in a thorough and proper manner, and a proper decision is rendered on a complete record, no final decision can be made concerning plaintiff's entitlement to benefits.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt.# 5) is granted in part and denied in part. The Commissioner's motion for judgment on the pleadings (Dkt.# 9), is denied, and the complaint is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) consistent with this decision. On remand, the Commissioner is directed to properly consider plaintiff's non-exertional impairments in determining whether plaintiff can perform other work.

IT IS SO ORDERED.