**Vanessa I. SOTO, Plaintiff,**

v.

**Joanne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 01–CV–6479L.**

United States District Court, W.D. New York.

Jan. 13, 2003.

Lawrence I. Heller, Rochester, NY, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., United States Attorney, Rochester, NY, for Defendant.

### DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Vanessa I. Soto ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability insurance benefits ("DIB"). As discussed below, the Commissioner's decision is reversed, and this case is remanded solely for the calculation and payment of benefits.

## BACKGROUND

Vanessa I. Soto was born on July 23, 1961 (Tr. 40.) She completed a high school education and one year of college. (*Id.*) Her previous work experience is as a factory laborer, where she was required to perform heavy lifting, cleaning, chemical work, and operate a forklift. (Tr. 41–42.)

Plaintiff applied for DIB benefits on April 6, 1999, alleging that her chronic pain syndrome ("CPS"), fibromyalgia, depression, asthma, allergies and esophageal reflux became disabling on January 27, 1993. (Tr. 72, 77, 111.) [1]

Her application was denied initially and on reconsideration. (Tr. 65–67, 74–76.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and after a hearing the ALJ determined that plaintiff was not entitled to benefits and denied her claim. (Tr. 19–27.) The ALJ's decision became the Commissioner's final decision on August 2, 2001 when the Ap-

peals Council denied plaintiff's request for review. (Tr. 4–5.) Plaintiff timely commenced this action seeking review of the Commissioner's final decision.

The Commissioner filed a motion before this Court for a remand, pursuant to the fourth sentence of § 205(g) of the Act, 42 U.S.C. § 405(g). The Commissioner conceded that the ALJ failed to correctly apply the law and regulations and now seeks a remand for a new hearing. I fully concur with the Commissioner that the ALJ committed error in denying benefits, but I disagree that a remand for a new hearing is appropriate. The record amply supports plaintiff's entitlement to benefits and, therefore, a remand is directed but solely for the calculation and payment of benefits.

## DISCUSSION

In this case, both plaintiff and the Commissioner agree that the ALJ erred in his analysis and, therefore, the Commissioner's final decision denying benefits cannot be sustained. The principal issue then for the Court is what remedy is appropriate.

Depending on the nature of the error, a remand for further proceedings and development of the record is often appropriate and necessary. That is not the case here. There is no reason why the Commissioner should be afforded a second chance, with its attendant delay, to properly review the evidence of record. The record that exists is more than sufficient to show that plaintiff is entitled to benefits.

 Where, as here, the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose, remand for calculation of benefits is appropriate. *See*

---

1. "Tr.__" refers to the page of the transcript of the Administrative Record filed by the Commissioner with her Answer.

*Parker v. Harris,* 626 F.2d 225, 235 (2d. Cir.1980). Clearly, there is no basis to conclude that a more complete record might support the Commissioner's decision. *See Rosa v. Callahan,* 168 F.3d 72, 83 (2d. Cir.1999). I find that the record, as it stands now, contains sufficient evidence to support a finding of disability before the expiration of the plaintiff's insured status. As will be shown below, the ALJ's error was in interpreting and weighing the evidence before him, not in assembling a complete record. As such, I do not believe that returning this case to the Commissioner for a proper analysis will yield any result other than that the plaintiff is disabled. Therefore, remand for calculation and payment of benefits is appropriate.

In proceeding through the five-step required inquiry, the ALJ determined that plaintiff had not engaged in substantial gainful activity, that she had a severe impairment, but that impairment did not meet or equal the criteria listed at 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ proceeded to the fourth step and determined that plaintiff had the residual functional capacity ("RFC") to perform the requirements of work except for standing and/or walking for more than a total of two hours in a 8–hour workday, sitting for more than six hours in an 8–hour workday, lifting, carrying, pushing and/or pulling more than 20 pounds occasionally or 10 pounds frequently, and ascending stairs or bending more than occasionally. (Tr. 26).

He found that she was capable of performing a limited range of light work.

The ALJ's determinations that the plaintiff's diagnoses of fibromyalgia and chronic pain syndrome ("CPS") were not well supported by objective medical evidence, and that the plaintiff's RFC allowed her to perform light and sedentary work are not supported by substantial medical evidence of record. Furthermore, I find that the ALJ improperly discounted the plaintiff's subjective symptoms in making his determination.

*Fibromyalgia* [2]

Based upon the medical evidence in the record, the plaintiff's primary diagnoses are fibromyalgia and CPS. The ALJ determined that there was a lack of clinical findings to support the fibromyalgia diagnosis,[3] and noted that none of the plaintiff's treating physicians articulated the requisite number of tender areas in any treatment notes. (Tr. 21.) Further, he asserts that treating physician Dr. Condemi, the plaintiff's rheumatologist, diagnosed her with fibrositis rather than fibromyalgia.[4] (Tr. 22.)

■ These statements by the ALJ demonstrate a failure to fully consider the medical evidence of record, as well as a misunderstanding of fibromyalgia. Fibromyalgia has been recognized "as a potentially severe impairment that may support a claim of disability under the Social Security Act." *Brunson v. Barnhart,* 2002 WL 393078 at *15 (E.D.N.Y.2002). Because of

---

**2.** Fibromyalgia is a chronic condition causing pain, stiffness, and tenderness of the muscles, tendons, and joints. Fibromyalgia is also characterized by restless sleep, awakening feeling tired, fatigue, anxiety, depression, and disturbances in bowel function. *FocusOnArthritis.com–Diseases and Conditions–Fibromyalgia* at http://www.focusonarthritis. com/script/main/art.asp?li=MNI & ArticleKey=363 & page=1# 1whatis (January 8, 2003).

**3.** According to the American College of Rheumatology, a diagnosis of fibromyalgia requires evidence of pain in 11 of 18 specified "trigger points."

**4.** Fibromyalgia was formerly known as fibrositis. The term denotes the same affliction. (Tr. 14); *FocusOnArthritis.com–Diseases and Conditions–Fibromyalgia.*

the unavailability of clinical tests for fibromyalgia, an ALJ cannot reject a physician's diagnosis of fibromyalgia on the grounds that it is not supported by objective medical findings. *See Id.* While it is true that no treating physician specifically noted that the plaintiff had the requisite "11 out of 18 trigger points," the record is replete with treatment notes indicating that plaintiff's entire body was tender and painful to the touch. (Tr. 149, 152–154, 156.) Specifically, Dr. Condemi noted that while the plaintiff's musculoskeletal exam was positive for total pain, pain was most severe at the "fibrositis trigger points." (Tr. 152.) A second treating physician, Dr. Nemetz, noted the plaintiff had multiple tender areas. (Tr. 187–8, 202). Drs. Condemi, Nemetz, Poduri and Balderman (a consultative physician upon who's opinion the ALJ chiefly relied) all diagnosed the plaintiff as having fibromyalgia. Based upon the reports of the plaintiff's treating physicians, as well as those of Drs. Poduri and Balderman, it seems clear that several qualified physicians and specialists believed the plaintiff suffered from fibromyalgia. Further, each physician bolstered their diagnoses with evidence of widespread body pain. Based upon this evidence, I simply find no support for the ALJ's determination that the plaintiff did not suffer from fibromyalgia.

*The Treating Physician Rule*

■ It has long been recognized that a treating source's opinion is entitled to some extra weight in claims for Social Security disability benefits. The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan,* 168 F.3d 72, 78 (2d.Cir.1999); *see also Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)(2)[5]). In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion or testified before him." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) *citing McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *see also Wagner v. Secretary of Health and Human Servs.,* 906 F.2d 856, 862 (2d Cir.1990) ("a circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits).

The ALJ determined that the opinions of the plaintiff's treating physicians were not well supported by objective medical findings. By contrast, he found that the consultative assessment by Dr. Stephen Balderman (Tr. 206–214) and an assessment by the State Disability Determinations Service (Tr. 227–234) were better supported and more reliable.

■ I find that the ALJ improperly dismissed the many reports of the plaintiff's treating physicians in favor of analyses that were less supported by medical evidence in the record. The medical records submitted by Drs. Nemetz, Poduri and Condemi clearly demonstrate the plaintiff's

**5.** The regulations, applicable at the time of the ALJ's decision, and which were first promulgated in 1991, state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Although these regulations have somewhat diluted the strength of the original rule, the ALJ must still give great deference to a treating physician's finding on disability.

long history of pain and clearly articulate their opinions that such pain supports the diagnoses of fibromyalgia and CPS. These physicians go on to limit the plaintiff's RFC to a level below that necessary for sedentary work.[6] Dr. Nemetz noted that she "could not imagine [plaintiff] succeeding in a competitive work situation (Tr. 205), while Dr. Poduri felt she could never return to work." (Tr. 142.) Dr. Condemi evaluated the plaintiff as having severe limitations in all functional areas: she could not walk longer than ten minutes without pain; she could sit for only ten to fifteen minutes at a time; and she could not climb, balance, stoop, crouch, kneel or crawl.[7] (Tr. 215–217.)

▆ Instead of giving controlling weight to these opinions, the ALJ based his ruling on a consultative exam and a State agency assessment. Interestingly, the consultative examination by Dr. Balderman indicates a diagnosis of *fibromyalgia.* (Tr. 209.) This diagnosis goes on to opine that the plaintiff had a "mild limitation in pushing and pulling," "moderate limitation in standing," "minimal to mild limitation in sitting," and "moderate limitation in bending." *See Id.* A physician's use of the terms "moderate" and "mild", without additional information, does not permit the ALJ to make the necessary inference that the plaintiff can perform specific exertional requirements. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir.2000). The State Disability Determinations Service assessment fares no better. The State consul-

tant gives no objective medical evidence supporting his/her determination of the plaintiff's functional capacity. In fact, there is no evidence the consultant even reviewed treatment notes from the plaintiff's treating physicians. Clearly, neither of the sources can be considered "substantial evidence" upon which the ALJ could base his ruling. As such, they do not possess the weight necessary to overcome the well documented reports and opinions of the plaintiff's treating physicians. I therefore find that the opinions by the plaintiff's treating physicians are entitled to controlling weight.

*Plaintiff's Subjective Symptoms*

▆ The ALJ determined that the overall record contained sufficient inconsistencies to find that the plaintiff was exaggerating her level of pain. I find the ALJ's rationale for discrediting the plaintiff's subjective symptoms to be totally unpersuasive. Clearly, the ALJ should have placed more value on the testimony given by plaintiff.

When fibromyalgia is alleged, the credibility of a claimant's testimony regarding her symptoms must take on substantially increased significance in the ALJ's evaluation of the evidence. *See Brunson,* 2002 WL 393078 at *16. Because of the lack of clinical tests to identify this affliction, the subjective opinions of plaintiff are helpful when determining issues of severity.

---

6. "Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *See Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 643 (2d Cir.1983) ("By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required."). Sedentary work also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

7. The ALJ incorrectly stated that Dr. Condemi's evaluation was based primarily on the plaintiff's subjective assessment of her symptoms. A thorough reading of the plaintiff's medical records reveals that Dr. Condemi made his assessment based upon his own treatment notes. (Tr. 152–3.)

The ALJ notes that Dr. Condemi indicated the plaintiff was "tolerating" her pain better as evidence that the plaintiff's allegations of pain were exaggerated. (Tr. 23.) Plaintiff's counsel correctly points out that 'tolerating pain' denotes *endurance* of pain rather than abatement of it. (Tr. 10.) The ALJ also considered the fact that the plaintiff testified she does nothing all day, but has no evidence of muscle atrophy, as indication that she is exaggerating the pain. The record makes clear that, although plaintiff is heavily dependent on her children and others for help, she is not bedridden and is able to move around when necessary. I do not see how the absence of muscle atrophy leads conclusively to a finding that plaintiff has been embellishing her symptoms. Finally, the ALJ notes that the plaintiff was able to sit through the administrative hearing without any apparent signs of discomfort. An "ALJ's observation that [a claimant] sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight." *See Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983). Where it is well documented that the plaintiff has endured this pain for many years, and has as a result learned to tolerate such pain, I find it of very limited value that the ALJ observed no *apparent signs* of distress.

### CONCLUSION

The Commissioner's motion for a remand for further proceedings (Dkt.# 11) is denied, and this case is remanded to the Commissioner solely for the calculation and payment of benefits.

IT IS SO ORDERED.