Robert L. HUHTA, Plaintiff,

v.

Jo Anne B. BARNHART, As Commissioner of the Social Security Administration, Defendant.

No. 02–CV–6089L.

United States District Court,
W.D. New York.

May 17, 2004.

Andrew M. Rothstein, Law Firm of Andrew M. Rothstein, Elmira, NY, for Plaintiff.

Christopher V. Taffe, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Robert L. Huhta, brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability benefits ("SSD").

This case has a long procedural history that began nine years ago. Plaintiff originally applied for SSD benefits on July 27, 1995. (Tr. 151, 210).[1] He listed a disability onset date of April 1, 1995, (Tr. 203), but later amended the onset date to July 17, 1995. (Tr. 91). Plaintiff's application was denied initially and on reconsideration. (Tr. 177, 184). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on August 23, 1996. On October 21, 1996, ALJ James Johnsen issued a decision denying plaintiff's claim for benefits. (Tr. 351).

On appeal, the Appeals Council issued an order remanding the case for further proceedings. (Tr. 396). ALJ Johnsen conducted a supplemental hearing on October 28, 1997, (Tr. 84), and on December 22, 1997, issued another decision finding that plaintiff was not disabled. (Tr. 12–24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on January 13, 2000. (Tr. 4).

Plaintiff then brought an action (00–CV–6093S) in this Court on March 6, 2000. On November 7, 2000, pursuant to a stipulation between the parties, the Court reversed the Commissioner's decision and remanded the case for further administrative proceedings. (Tr. 557). A third hearing was held on July 17, 2001 before a different ALJ, Judge Franklin Russell. Following that hearing, ALJ Russell determined that plaintiff was not disabled in a decision dated December 6, 2001. (Tr. 508). That decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Plaintiff commenced the instant action on February 19, 2002.

The Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt.# 4). Plaintiff has cross-moved for summary judgment under Rule 56. (Dkt.# 7). As discussed below, the Commissioner's decision is modified, and the matter is remanded for the calculation and payment of benefits from December 10, 1996 through December 31, 1997.

## FACTUAL BACKGROUND

Plaintiff was born on June 4, 1947. He finished the eleventh grade, and later obtained a GED. Plaintiff began working in 1969 as a union roofer, and then worked as a self-employed roofer from 1984 until July 15, 1995, when he fell and broke his right ankle. (Tr. 302). Plaintiff has not worked since then.

1. "Tr." refers to the transcript of the administrative record.

Plaintiff's medical problems relevant to his claim began ten years before that accident, when he sought care at the Guthrie Clinic for pain in his right knee. An x-ray revealed a bony irregularity in the knee. (Tr. 257). Plaintiff has continued to receive treatment for his knee since then.

Plaintiff has also been seen for various other complaints, including pain in his left knee, (Tr. 281), lower back, and hip. (Tr. 365). In 1994, plaintiff was diagnosed by Dr. Robert Cohen of the Guthrie Clinic with degenerative disc disease of the back, arthritis of the left knee, and bursitis of the left hip. (Tr. 365).

After plaintiff broke his ankle in 1995, Dr. Mark D. Gibson reset the fracture, and inserted a fixation screw and metal plate. (Tr. 317). Although plaintiff initially recovered well from the fracture, (Tr. 319), swelling and pain in the ankle persisted, as did his knee problems. After the fracture healed, plaintiff continued to use a cane when he walked.

In May 1997, plaintiff underwent a total left knee replacement, due to end-stage severe degenerative disease. Although plaintiff's recovery from that surgery went generally well, in October 1997, Dr. Gibson, who performed the surgery, opined that plaintiff was "disabled from the standpoint of general arthritic condition." (Tr. 452). He stated that plaintiff could lift and carry no more than ten pounds, and that he could not stoop, crouch, kneel, or crawl at all. (Tr. 456).

Plaintiff has been seen and treated by a number of other physicians since then. In general, their findings indicate that plaintiff's physical activities are limited due to problems with his knees, hip, right ankle, and lower back, compounded by his obesity (plaintiff, who is 5′ 11″ tall, weighed roughly 300 pounds for most of the relevant period).

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

The first step determines whether the claimant is engaged in 'substantial gainful activity.' If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'... contained in subpart P, appendix 1, of the regulations.... If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits his to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462

(1986) (citations omitted). It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis. At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy. *See Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

## II. The ALJ's Decision

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 17, 1995. The ALJ concluded that plaintiff had severe impairments (status post right ankle fracture, status post left knee replacement surgery) that did not meet or equal a listed impairment. The ALJ found that, although plaintiff had a herniated disc in his cervical spine, hypertension, and a history of alcohol abuse, these impairments were not severe and not considered in the RFC analysis. At step four, the ALJ concluded that plaintiff retained the RFC to perform light work until December 10, 1996. From that date through December 31, 1997 (the date that plaintiff's insured status expired) plaintiff retained the RFC to perform only sedentary work. The ALJ concluded that plaintiff could not perform his past relevant work as a roofer (which is considered medium work). At step five, the ALJ utilized the Medical–Vocational Grid Rules ("Grid Rules"), and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because he retained the RFC to perform other work. (T. 507–13).

## III. Standards of Review

■ The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000); *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot substitute its own judgment for that of the Commissioner. *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

■ Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley,* 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal,* 134 F.3d at 504 (quoting *Johnson,* 817 F.2d at 986).

## IV. Plaintiff's Alleged Disability Before December 10, 1996

■ The Commissioner's decision that plaintiff was not disabled between July 17, 1995 and December 10, 1996 is supported by substantial evidence and is not based on legal error. The ALJ found that plaintiff retained the RFC to perform light work between July 17, 1995 and December 10, 1996.[2] Based on plaintiff's age at that time (49 years old), education (completion of eleventh grade and a GED), and work experience (previous semi-skilled work with transferable skills), he found that Grid Rule 202.22 directed a finding that plaintiff was not disabled. (T. 510).

The ALJ's RFC finding that plaintiff could do light work up until December 10, 1996 is supported by medical evidence in the record, including a December 12, 1995, RFC analysis completed by Dr. Jin–Soo Rhee, a non-examining reviewing physician. Dr. Rhee opined that plaintiff could occasionally lift 20 lbs., frequently lift/carry 10 lbs., stand or walk six of eight hours in a workday, sit less than six hours in a workday, and was unlimited in his ability to push or pull. (T. 169–76). These findings are consistent with the ability to do light work. See 20 C.F.R. § 404.1567(b). Dr. Jon Miller, a second non-examining, non-treating physician, concurred with Dr. Rhee's findings on February 15, 1996. (T. 183).

The ALJ properly relied on Dr. Rhee's opinion when determining plaintiff's RFC for this time period because it was the only medical opinion of record pertaining to plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1527(f)(2)(ii) (noting that reviewing physicians are qualified physicians who are also experts in the evaluation of disability claims under the Act). Further, Dr. Rhee reviewed the medical records of plaintiff's treating physicians in coming to this conclusion. (See T. 179). Finally, Dr. Rhee's opinion is not contradicted by other evidence in the record for this time period. 20 C.F.R. § 404.1527(f)(2)(ii). In fact, the only other evidence in the record that speaks to plaintiff's RFC during this period comes from Dr. William Plummer, plaintiff's treating internist, who opined that plaintiff was less restricted than Dr. Rhee found. In February 1996, Dr. Plummer stated that plaintiff had no limitation in his ability to stand, walk, sit, push or pull. (T. 327). Dr. Plummer did not indicate one way or the other whether plaintiff had any lifting restrictions. (T. 328).

The medical records during this time period show that plaintiff sustained a complex right ankle fracture in July 1995 that required an open reduction surgery and placement of a fixation screw and plate. Dr. Mark Gibson (plaintiff's treating orthopedic surgeon) performed the surgery on July 16, 1995. (T. 317). However, evidence of this impairment does not preclude a finding that plaintiff could perform light work. In the weeks after the surgery, Dr. Gibson opined that plaintiff was healing well, that the "x-rays are surprisingly good. [Range-of-motion] is coming along well." (T. 319–20). In November 1995, Dr. Gibson found that plaintiff's ankle was "getting better" but was not asymptomatic. He noted that plaintiff continued to have problems with swelling and pain in

---

**2.** "Light" work is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

his ankle and was walking with the use of a cane. (T. 320). Nevertheless, when Dr. Gibson examined plaintiff again in January 1996, he noted that plaintiff was experiencing some numbness in his ankle and foot, and stated that there was "little further for [him] to offer [plaintiff] from the standpoint of active orthopedic treatment." (T. 380). Plaintiff did not see Dr. Gibson again until ten months later in November 1996. (T. 380–81).[3]

On February 28, 1996, plaintiff saw Dr. Robert Cohen, the Chief of Orthopedic Surgery at the Guthrie Clinic, for a second opinion about the condition of his ankle. Dr. Cohen found that plaintiff's ankle continued to be swollen. (T. 369). He noted that plaintiff limped with an antalgic gait. His opinion was that the swelling in the ankle was likely due to a circulation problem in plaintiff's veins or to the displaced fracture of the ankle. (T. 369).

Neither Dr. Gibson nor Dr. Cohen gave an opinion prior to December 1996 that plaintiff's ankle fracture limited his ability to perform basic work activities. Dr. Gibson stated only that plaintiff could not go back to the activities that he performed as a roofer, (T. 381), but that is not inconsistent with Dr. Rhee's finding that plaintiff could do light work.

In November 1995, plaintiff was examined by Dr. John Lamb at the request of the State agency. Dr. Lamb found that plaintiff was recuperating from the recent fracture of his right ankle, and that plaintiff had degenerative arthritis of his knees, lumbar spine, and neck. (T. 308). However, Dr. Lamb did not provide an RFC assessment. Although Dr. Lamb's assessment includes subjective complaints by plaintiff concerning his ability to stand, walk, sit, and climb stairs, Dr. Lamb gives no opinion as to whether these complaints are supported by objective medical findings. (T. 307).

In March and April 1996, plaintiff was evaluated by Dr. David Kung, a neurosurgeon, for chronic neck pain with bilateral tingling and numbness of the arms. Dr. Kung noted that plaintiff had previously undergone cervical spinal surgery at C5–6 in 1985. An MRI revealed a current large disc herniation at C4–5 on the right side. Dr. Kung recommended surgery, which plaintiff apparently declined at that time. (T. 373). Dr. Kung also did not discuss how, if at all, this impairment affected plaintiff's ability to perform basic work activities.

In August 1996, at the first hearing before an ALJ, plaintiff testified that his right ankle pain was constant, but varied from mild to severe, depending on his level of activity. (T. 58–59). Plaintiff testified that he could meet the lifting requirement for light work (20 lbs.), but he disagreed that he could stand for six hours. (T. 68–69). Plaintiff did not know whether he could sit for six hours and stated that he could walk one-quarter of a mile without pain. (T. 69–70). As for activities of daily living, he stated that he could drive, dress and bathe himself without help from others. He hired someone to clean for him. (T. 81). He also testified that he did not have neck surgery because he did not have health insurance and could not afford it. (T. 82).

3. In light of this ten-month break in treatment in 1996, Dr. Gibson's retrospective statement in October 1997 that plaintiff was disabled beginning in July 1995 and remained disabled continuously through 1996 (see T. 453) is not persuasive. Dr. Gibson examined plaintiff in January 1996 and then not again until November 1996. At neither examination did Dr. Gibson make any contemporaneous notes regarding plaintiff's ability to engage in basic work activities. Therefore, this single statement does not constitute substantial evidence that can contradict Dr. Rhee's findings.

Plaintiff returned to Dr. Gibson on November 4, 1996. At that time, Dr. Gibson found that plaintiff still had problems with swelling and pain in his right ankle. (T. 381). Plaintiff was also complaining of bilateral knee problems, left worse than the right. Dr. Gibson noted that x-rays indicated significant degenerative arthritis of the left knee. (T. 381). By letter dated December 17, 1996, Dr. Gibson opined that, due to the problems that plaintiff was having with both of his knees and his ankle, he "will likely be permanently 100% disabled." (T. 382). Dr. Gibson, however, did not provide an opinion as to how plaintiff's impairments specifically affected his ability to walk, stand, sit, or engage in other work activities.

On December 10, 1996, Dr. Mario Lecuona, an orthopedic surgeon, evaluated plaintiff for the Office of Vocational and Educational Services for Individuals with Disabilities (VESID). Dr. Lecuona completed an RFC analysis of plaintiff and found that he was "greatly limited" in his abilities to walk, squat, and crawl, and "moderately limited" in his abilities to stand, stoop, bend, use his right leg, and reach above his shoulders.[4] He also found that plaintiff could not push, pull, carry, or lift more than 10 lbs. (T.443–44). Dr. Lecuona's December 1996 evaluation is the first statement by a treating or examining physician regarding plaintiff's functional limitations that is inconsistent with Dr. Rhee's findings that plaintiff could perform light work.

I find that the ALJ properly weighed all of the medical evidence of record for the period prior to December 10, 1996 and,

based on this evidence, found that plaintiff retained the RFC to perform the full range of light work. Although there was evidence in the record that plaintiff could not perform all of the functions for light work, that evidence consisted mostly of plaintiff's unsubstantiated subjective complaints concerning his limitations. The ALJ properly could reject those complaints in light of the medical evidence in the record. 20 C.F.R. § 404.1529. Even assuming that the ALJ fully credited plaintiff's subjective complaints about his ability to walk or stand, that evidence would support a finding that plaintiff could perform sedentary, not light, work. However, even when limited to sedentary work, the Grid Rules would still direct a finding of "not disabled" based on plaintiff's other vocational factors. *See* 20 C.F.R. part 404, subpart P, appendix 2, Rule 201.22.[5]

## V. Plaintiff's Disability After December 10, 1996

■ I find, however, that the Commissioner's decision regarding plaintiff's disability after December 10, 1996 is based on legal error, is not supported by substantial evidence, and must be modified. I agree with the plaintiff that the ALJ erred when weighing the opinions of plaintiff's treating and examining physicians during this period. Furthermore, the ALJ's finding that plaintiff could perform the full range of sedentary work after December 10, 1996 is not supported by substantial evidence, and his reliance on the Grid Rules was improper in light of the evidence of both plaintiff's exertional and nonexertional impairments.

4. "Greatly limited" was defined as "50%" limited and "moderately limited" was defined as "25%" limited. (T. 444).

5. In light of this finding, I need not consider plaintiff's argument that the ALJ erred by failing to consider plaintiff's neck and right knee impairments as severe. There is no evi-

dence in the record that either impairment significantly affected plaintiff's ability to engage in basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff's argument that these impairments "obviously impacted on the plaintiff's ability to do such activities [as] standing, walking, pushing, pulling, and carrying" is not persuasive. (Dkt. # 7, at 13).

Lastly, I find that the Commissioner failed to meet her burden of proving that there were other jobs that existed in the national economy that plaintiff could perform.

## A. Treating Physician's Opinion

■ The ALJ erred by failing to give controlling weight to the opinions of plaintiff's treating physicians, Dr. Gibson and Dr. Plummer. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. § 404.1527(d). Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In a work-related activities report dated October 30, 1997, Dr. Gibson found that plaintiff was limited to lifting/carrying no more than 10 lbs. He found that plaintiff could never stand, walk, climb, balance, stoop, crouch, kneel, or crawl. Plaintiff was also limited in the ability to push and pull, but was not limited in his ability to sit. (T. 455–58).

ALJ Russell found that Dr. Gibson's RFC analysis was not entitled to controlling or even substantial weight on the grounds that it was contradicted by other substantial evidence of record, including the November 1997 opinion from Dr. Plummer and the December 1995 opinion of Dr. Rhee, the non-examining, review physician. This finding is not supported by substantial evidence.

First, Dr. Plummer's opinion, as set forth in a November 12, 1997 work-related activities report, does not contradict the opinion of Dr. Gibson. Although there are minor differences in their findings, their opinions are consistent in all material respects. Consistent with Dr. Gibson, Dr. Plummer found that plaintiff could never climb, stoop, kneel, or crawl, and could only occasionally balance or crouch. (T. 461). Dr. Plummer likewise limited plaintiff's pushing and pulling. (T. 462). Dr. Plummer found that plaintiff was limited to lifting/carrying a maximum of 20 lbs. (as compared to Dr. Gibson's opinion of 10 lbs.), but noted that he could not walk with or carry that weight due to his degenerative knee-joint disease. (T 460). Dr. Plummer also found that plaintiff could walk no more than 100 or 200 feet, and then only with the aid of a cane. (T. 461). Although Dr. Gibson opined that plaintiff could not walk at all at work, Dr. Plummer's opinion that plaintiff was limited to only 100 or 200 feet is not so inconsistent as to render Dr. Gibson's opinion worthy of little or no weight.

I find that the ALJ should have accorded controlling weight to the RFC analyses of Dr. Gibson and Dr. Plummer. *See* 20 C.F.R. § 404.1527(d)(2). Both had a well-established treating relationship with plaintiff that included frequent examinations. Further, there was objective medical evidence, including x-rays and findings on examination, to support their opinions. Also, Dr. Gibson is a specialist in the field of orthopedics, and Dr. Plummer is a specialist in internal medicine. *Id.*

Lastly, the ALJ erred by rejecting these RFC analyses based on the opinion of Dr. Rhee, a non-examining, non-treating physician. Dr. Rhee gave his opinion almost two years earlier in December 1995, and plaintiff's medical condition had substantially deteriorated since then. Plaintiff had undergone a total left knee replacement, and the degenerative arthritis in his right knee had worsened. Therefore, although Dr. Rhee's RFC provided substantial evidence of plaintiff's condition prior to December 1996, reliance on that opinion thereafter was legal error, particularly in light of the medical opinions of Dr. Gibson, Dr. Plummer, and Dr. Lecuona that pertained to plaintiff's post-December 1996 condition. *See Balsamo,* 142 F.3d at 80–81 (ALJ erred by failing to accord controlling weight to treating physician's opinions where there was no other medical opinion in the record that disputed their findings).

### B. Plaintiff's Ability to Perform Less Than the Full Range of Sedentary Work

■ In addition, reversal is required because the ALJ's decision that plaintiff could perform the full range of sedentary work after December 10, 1996 is not supported by substantial evidence. "Sedentary" work requires the ability to walk and stand for as much as two hours a day. *See* 20 C.F.R. § 404.1567(a). It also requires the ability to stoop occasionally, which means up to one-third of an eight-hour work day. *See* Social Security Ruling 96–9p, 1996 WL 374185, *8 (S.S.A. July 2, 1996) ("SSR 96–9").

The opinions of plaintiff's treating and examining physicians, however, are inconsistent with a finding that plaintiff could perform a full range of sedentary work. Dr. Gibson found that plaintiff could *never* stand, walk, or stoop in an eight-hour workday. (Tr. 456). Dr. Plummer opined that plaintiff could stand and walk for less than one hour, walk only 100 to 200 feet at

a time, and could never stoop. (Tr. 461). Dr. Lecuona of VESID opined that plaintiff was greatly limited his ability to walk, and moderately limited in his ability to stand and stoop. (Tr. 444).

When the opinions of Dr. Gibson and Dr. Plummer are given their proper weight, and when they are considered in light of the other evidence of record, including the opinion of Dr. Lecuona, substantial evidence supports the conclusion that plaintiff had exertional and nonexertional limitations that precluded performance of the full range of sedentary work. *See* SSR 96–9, 1996 WL 374185, at *6 (noting that sedentary work requires that an individual be able to stand and walk for a total of two hours during an eight-hour workday), and at *8 ("a *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding [of] disabled would usually apply . . . .") (emphasis in original).

■ Because plaintiff retained the RFC to perform something less than the full range of sedentary work, the ALJ erred by using the Grid Rules to find that plaintiff was not disabled. *Bapp v. Bowen,* 802 F.2d 601, 605 (2d Cir.1986) (barring use of the rules where "the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment"); *Iannopollo v. Barnhart,* 280 F.Supp.2d 41, 50–51 (W.D.N.Y.2003) (reversing ALJ's decision finding plaintiff was not disabled based on application of the Grid Rules that plaintiff could perform full range of sedentary work in light of treating physician's opinion that plaintiff had significant nonexertional impairments, including an inability to climb, stoop, crouch, kneel, and crawl); *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y.1996) (precluding reliance on the Grid Rules where the "claimant's exertional impairments are compounded by significant nonexertional

impairments that limit the range of sedentary work that the claimant can perform"); *Leiter v. Massanari*, No. 01–CV–6075, 2001 WL 1822679, *12 (W.D.N.Y. Nov. 15, 2001) (finding error where the ALJ did not explain why he disregarded treating physician's opinion regarding claimant's inability to stoop, crouch, crawl or kneel).

## C. The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work

■ At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of his age, education, work experience, and ability to perform less than the full range of sedentary work. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002). The Commissioner failed to meet that burden here when she relied on the Grid Rules for determining that plaintiff was "not disabled." In light of the medical evidence that plaintiff could not perform the full range of sedentary work, the ALJ should have consulted a vocational expert in order to determine whether there were jobs that were consistent with plaintiff's limitations. *See Iannopollo*, 280 F.Supp.2d at 51 (and cases cited therein). In part, because of this, the Appeals Council remanded the case in 1997.

After this case was remanded by the Appeals Council, ALJ Johnsen received testimony from a vocational expert. (Tr. 129–48). Based on the hypothetical questions imposed by ALJ Johnsen, the vocational expert testified that there were four jobs that plaintiff could perform based on his transferable skills. However, all of these jobs were classified by the Department of Labor's Dictionary of Occupational Titles as "light" work. In addition, the hypothetical questions posed to the vocational expert did not take into account the physical limitations described by Dr. Gib-

son or Dr. Plummer, in opinions rendered after the expert testified.

A finding that plaintiff could perform these other jobs conflicts with this Court's finding that plaintiff can perform less than the full range of sedentary work. As a result, the vocational expert's testimony from 1997 cannot provide substantial evidence that plaintiff can perform other work. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *Mathews v. Barnhart*, 220 F.Supp.2d 171, 175–76 (W.D.N.Y.2002).

■ Therefore, the Commissioner's decision cannot stand. Nine years have elapsed since plaintiff first filed his application for benefits. Further, the Commissioner has had three opportunities to apply the correct legal standards, to weigh the evidence properly, and to meet her burden of proving that plaintiff was not disabled. The Commissioner has failed to meet her burden that plaintiff can perform other work after December 10, 1996. Accordingly, a remand solely for the calculation of benefits is warranted. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000) (remanding for the sole purpose of calculating an award of benefits where Commissioner failed to meet his burden of proof at step five that plaintiff could perform other work and plaintiff's application had been pending more than six years); *see also Balsamo*, 142 F.3d at 82 (remanding for benefits based on errors at step five and where application had been pending for four years); *Soto v. Barnhart*, 242 F.Supp.2d 251, 254 (W.D.N.Y.2003) (remanding solely for calculation of benefits and not further proceedings where the ALJ's error was in interpreting and weighing treating physician evidence, not in failing to develop a complete record).

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt.# 4) is granted

in part and denied in part. Plaintiff's cross-motion for summary judgment (Dkt.# 7) is granted in part and denied in part. The Commissioner's decision that plaintiff was not disabled is modified pursuant to 42 U.S.C. § 405(g), and the case is remanded for the calculation and payment of benefits from December 10, 1996 through December 31, 1997, the date that plaintiff was last insured for SSD benefits.

IT IS SO ORDERED.