**John J. FONSECA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95–CV–0826A(H).**

United States District Court, W.D. New York.

Jan. 3, 1997.

---

468

John J. Fonseca, Olean, NY, Pro Se.

Patrick H. Nemoyer, United States Attorney, Buffalo, New York, for the Government; Mary K. Roach, Assistant United States Attorney, of Counsel.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on March 18, 1996. Both parties moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). On November 13, 1996, Magistrate Judge Heckman filed a Report and Recommendation, recommending that the Court grant defendant's motion and deny plaintiff's motion.

Plaintiff filed objections to the Report and Recommendation on November 27, 1996 and defendant filed a memorandum of law in response thereto.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions of the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for judgment on the pleadings is granted, plaintiff's motion is denied and the case is dismissed in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff, who was awarded disability benefits, disputes the disability onset date established by the Commissioner of Social Security (the Commissioner). He initiated this action seeking modification or remand of the Commissioner's decision, or reopening of his prior applications. Both parties have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Commissioner's motion should be granted, and plaintiff's motion should be denied.

## *BACKGROUND*

Plaintiff was born on October 3, 1946, and is currently 50 years old (T. 49).[1] He is a high school graduate who has been employed as a truck driver, pipe fitter, operations clerk, meter reader, laborer and janitor (T. 97). Plaintiff was employed by Columbia Gas of New York, Inc. from April 10, 1972 to October 20, 1986, and by that company's successor, New York State Electric and Gas, for the period May 5, 1991 to January 14, 1992 (T. 214). Plaintiff has not worked since January 14, 1992 (T. 12).

Plaintiff first applied for disability benefits on March 6, 1987, claiming he had been unable to work since October 17, 1986 because of an injury to his right arm (Item 13, Ex. C, p. 6).[2] The application was denied initially and on reconsideration (*id.* at p. 2). After a hearing held on November 18, 1987, Administrative Law Judge (ALJ) Margaret J. Quinn found that plaintiff could no longer perform his past relevant work because he was limited in the amount of weight he could lift, push or pull (*id.* at pp. 7–8). However, based on the record, ALJ Quinn found that plaintiff could perform light work that involved lifting no more than 20 pounds (*id.* at 8). Plaintiff was found not disabled within the meaning of the Social Security Act (*id.*).

Plaintiff made a second application for benefits on July 5, 1990, claiming total disability as of October 17, 1986 due to the combined limitations of his right arm injury and a bilateral hearing loss (T. 80). Again his application was denied through the reconsideration level. On April 9, 1991, a hearing was held before ALJ F. Lambert Haley who found that the combined effects of plaintiff's lifting limitations and a 30 percent hearing loss did not compromise his capacity to per-

---

1. Page citations preceded by "T" refer to the transcript of the administrative record filed by defendant as part of her answer.

2. This proceeding is not included in the Commissioner's administrative record. Copies of the administrative law Judge's decision and exhibit list are appended to plaintiff's memorandum of law (Item 13, Ex. C).

form light work (T. 174–79). Plaintiff was again found not disabled (T. 179).

Plaintiff made a third application for benefits on May 4, 1993, alleging total disability as of January 14, 1992 due to high blood pressure and internal bleeding at the base of the brain (T. 182, 210). In addition, plaintiff referenced his two previous applications, claiming a 30 percent permanent hearing loss and a 30 percent loss in the use of his right arm (T. 215). His application was denied initially and on reconsideration (T. 185–88, 199–201). Plaintiff requested a hearing (T. 25).

On October 26, 1994, a hearing was held at which plaintiff appeared *pro se*. ALJ James E. Dombeck determined that the medical record did not disclose any impairment of sufficient severity to meet the clinical criteria of Appendix 1, Subpart P to Regulations No. 4 (T. 12). However, he found that plaintiff's subjective complaints were consistent with the medical evidence presented and that the combined effects of plaintiff's severe hypertension, vertigo, cerebral ventricle hemorrhage (stroke), bilateral hearing loss, right arm injury, and persistent skin problems rendered him incapable of making a vocational adjustment to work existing in the national economy (T. 12–13). On November 3, 1994, plaintiff was found to have been disabled from February 20, 1993, the date of his hospitalization for severe hypertension and cerebral hemorrhage (T. 13–14). ALJ Dombeck also found that plaintiff was capable of performing light work prior to suffering his stroke (T. 15). This finding became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review (T. 5–6).

On September 25, 1995, plaintiff commenced this action seeking modification or remand of the Commissioner's decision with respect to the disability onset date (Item 1). Plaintiff also requested that the court reopen his two previous applications that were denied (Item 13, p. 1). Plaintiff claims that as of March 20, 1987, he had the same combination of impairments upon which benefits were eventually granted (Item 13, pp. 10–11). He alleges that the Commissioner did not consider his severe hypertension in combination

with his other disabilities for the period prior to February 20, 1993, and seeks to introduce additional records to substantiate his claim of an earlier disability onset date (Item 8, pp. 1–2).

### DISCUSSION

Plaintiff's action raises three issues: first, whether the Commissioner's determination that plaintiff's disability began on February 20, 1993 was supported by substantial evidence, second, whether the additional evidence plaintiff now presents justifies modifying or remanding the Commissioner's final decision of September 5, 1995, and third, whether plaintiff's prior applications should be reopened. Each issue is discussed in turn below.

### I. Judicial Review.

The Social Security Act states that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (McKinney's 1991). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion...." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991). Under this standard, judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson, supra*, 402 U.S. at 401, 91 S.Ct. at 1427. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). The Commissioner's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

■ In assessing plaintiff's claim that the Commissioner disregarded his severe hyper-

tension prior to February 20, 1993, the court must consider the evidence before the Commissioner at the time of the determination. The record shows that plaintiff was admitted to Olean General Hospital on February 20, 1993, experiencing vertigo and hypertension (T. 237, 240). Plaintiff's test results later showed he had suffered a hemorrhage within the cerebellum (stroke) (T. 243).

Following his stroke, plaintiff continued to experience vertigo and lightheadedness (T. 267, 272). Plaintiff testified that Dr. Feldman, a consultant on his case, ruled out corrective surgery as being too risky (T. 38, 42–43). Plaintiff stated that there is no treatment that will restore his balance (T. 43).

Dr. Arbaje, who treated plaintiff upon admission, indicated that plaintiff had been diagnosed with hypertension in 1985 (T. 235, 237). Dr. Feldman, who evaluated plaintiff on February 23, 1993, noted that plaintiff had high blood pressure in 1986, was treated and placed on anti-hypertensive medication, and discontinued medication in 1988 (T. 240). Dr. Feldman also stated that plaintiff had not experienced any vertigo prior to his hospitalization and had no history of seizures, syncope, headaches, or head pain (id.).

The record includes information on impairments and injuries suffered by plaintiff prior to February 20, 1993. The record shows that plaintiff suffered a right arm injury in 1986 and had been restricted since that time to lifting, pushing, or pulling no more than 30 pounds (T. 35, 39, 177, 207, 215, 277). It also contains evidence of plaintiff's 30 percent hearing loss (T. 36–37, 175, 215, 240). A head trauma plaintiff had suffered some 4–5 years earlier is noted as well (T. 240). Reports were obtained from all physicians named by plaintiff in his application (T. 211).

Plaintiff did not allege, in either his disability application or hearing testimony, that he experienced any symptoms or limitations as a result of high blood pressure prior to his stroke. When asked to describe his disability, plaintiff testified that he had two disabilities prior to February 1993, a right arm injury and a permanent partial hearing loss (T. 35–37, 210, 215). ALJ Haley, who considered plaintiff's second application for bene-fits, determined that the combination of those two impairments did not render plaintiff disabled (T. 174–79). Following ALJ Haley's decision on July 3, 1991, plaintiff did not seek medical treatment for any condition until his hospitalization on February 20, 1993 (Ex. 11, p. 3; Ex 13, p. 4).

While impaired by his arm injury and hearing loss, plaintiff returned to work for New York State Electric and Gas from May 5, 1991 to January 14, 1992 (T. 38, 214). He resigned after eight months because his employer wanted him to lift in excess of his doctor's restrictions (id.). Plaintiff testified that he asked to be reassigned to another position, but his employer had no jobs available within his restrictions (T. 39). Plaintiff further testified that he sought other work between January 14, 1992 and February 1993, and that his only restriction during that time was with respect to lifting, pushing, or pulling in excess of 30 pounds (T. 39, 40, 47).

At his hearing, plaintiff reviewed his file, submitted additional information, and stated that his file was complete as to medical reports and evidence (T. 34–35).

Considering the evidence before the Commissioner, and applying the standard set forth above, I find that the Commissioner's determination that plaintiff was capable of performing light work prior to February 20, 1993 is supported by substantial evidence. The record does not contain any subjective complaints by plaintiff or any objective medical evidence that would indicate plaintiff's high blood pressure was an impairment prior to his stroke.

## II. Remand for Consideration of Additional Evidence.

██ Plaintiff argues that the Commissioner's final decision of September 5, 1995, should now be modified or remanded for consideration of additional medical information relating to his treatment for high blood pressure. He claims that his hypertension, in combination with his arm injury and hearing loss, rendered him disabled prior to February 20, 1993.

The Social Security Act gives a reviewing court the power to affirm, modify, or reverse

the decision of the Secretary with or without remanding the case for a hearing. 42 U.S.C. § 405(g). A case may be remanded to the Commissioner at any time to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

In order to have newly submitted evidence considered, a claimant must show that the evidence is:

> " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.,* 745 F.2d 831, 833 (3d Cir.1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.... The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988) (also citing *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975); *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981); *Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985)).

Upon commencing this action, plaintiff submitted voluminous documents that he claims should now become part of the record (Item 8, Exs. 1–16; Item 13, Exs. A–L). They include hospital and physician records from his right arm surgery in 1987 (Item 8, Exs. 1, 13; Item 13, Ex. C), physician's records from April 1987 to August 1989 for high blood pressure treatment (Item 8, Ex. 2; Item 13, Ex. E), documents relating to two worker's compensation claims and an employee disability claim (none of which involved a claim of disability from high blood pressure) (Item 8, Exs. 2, 4–5, 8–12, 14–16; Item 13, Exs. A, D, F), the ALJ decision from plaintiff's first disability claim dated December 4, 1987 (Item 8, Ex. 2; Item 13, Ex. C), prescription records from April 1987 to November 1989 (Item 8, Ex. 3), release forms dated June 2, 1987 and July 5, 1990 (Item 8, Exs. 2, 7), a letter indicating that Olean Medical Group withdrew from attendance of plaintiff as of October 18, 1994 (Item 13, Ex. B), a photocopy of a case plaintiff references in his memorandum (Item 13, Ex. G), the ALJ decision from plaintiff's second disability claim dated July 3, 1991 (Item 13, Ex. H) (already part of the record at T. 172–81), excerpts from medical publications dealing with hypertension (Item 13, Exs. I, J), and a copy of a calendar from April 1987 apparently noting a scheduled appointment with the physician who treated plaintiff's right arm and the date on which plaintiff began receiving long-term disability benefits from his employer's insurer (Item 13, Ex. K).

Of the exhibits proffered, the treating physician's records from 1987 to 1989, plaintiff's prescription records from 1987 to 1989, the ALJ decision dated December 4, 1987 (noting that plaintiff took high blood pressure medication in 1987), and a report prepared for the worker's compensation board on April 24, 1987 that references plaintiff's high blood pressure treatment (Item 13, Ex. D), are the only documents arguably relevant to plaintiff's high blood pressure condition prior to February 20, 1993.[3]

For these documents to be material, there must be a reasonable possibility that the evidence would have influenced the Commissioner's determination regarding plaintiff's disability onset date. *See Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991); *Szubak v. Secretary of Health & Human Servs.,* 745 F.2d 831, 833 (3rd Cir.1984).

When a claimant has two or more unrelated impairments, the combined effects of all impairments are considered in determining eligibility, regardless of whether any single impairment is of sufficient severity to render the claimant disabled. 20 C.F.R. § 404.1523. None of plaintiff's additional evidence, however, indicates that his high blood pressure

---

3. Plaintiff argues that hospital records from his right arm surgery are also relevant because his blood pressure was recorded during that time. However, the eight blood pressure readings taken over a one-and-one-half hour period while plaintiff was in the recovery room are not probative of the existence of a long-term disabling condition.

was an impairment that should be taken into consideration. Dr. Dubin, who treated plaintiff for high blood pressure, recorded plaintiff's weight and blood pressure on several visits, noted that he discussed plaintiff's eating habits and ordered plaintiff to lose weight, prescribed medication and noted changes in same, noted that plaintiff was treated for severe athlete's foot, and that plaintiff complained on one occasion of a painful left elbow (Item 8, Ex. 2, pp. 2, 17–19, 22, 34, 39, 41). But in a record spanning more than two years, Dr. Dubin never rendered an opinion that high blood pressure limited plaintiff's activities in any way or restricted his ability to work prior to February 20, 1993. In fact, his records indicate that plaintiff's blood pressure readings decreased over the course of treatment. The remaining three documents merely verify that plaintiff was prescribed medication to control his blood pressure between April 1987 and November 1989.

This evidence, if added to the existing record, does not demonstrate a reasonable possibility of influencing the Commissioner's decision where plaintiff must allege an impairment that is medically verifiable. 20 C.F.R. § 404.1527.

In addition to their lack of materiality, the evidence presented to show plaintiff's high blood pressure disability is not new. Plaintiff was diagnosed with high blood pressure in 1985, was treated with anti-hypertensive medication beginning in 1986, and discontinued medication in 1988.[4] The application at issue here was filed on May 4, 1993. Medical evidence that a claimant could have offered prior to an administrative hearing or decision is not new evidence. See, e.g., Abreu–Mercedes v. Chater, 928 F.Supp. 386, 391 (S.D.N.Y.1996) (medical report considered new evidence to the extent it was evidence of corrective surgery performed after plaintiff's hearing before the ALJ); Fragale v. Chater, 916 F.Supp. 249, 255 (W.D.N.Y.1996) (diagnosis obtained after ALJ's decision that verified plaintiff's subjective complaints was new evidence).

Finally, plaintiff fails to show good cause why these documents were not presented earlier. Plaintiff claims that he did not "discover" evidence to substantiate his history of hypertension until 1995. His assertion is not credible given the fact that in 1987 plaintiff testified he was on medication to control his blood pressure (Item 13, Ex. C).

█ At oral argument plaintiff raised the issue of his *pro se* status. This is also considered in determining whether good cause exists. Plaintiff began treatment for high blood pressure several months prior to his first hearing on November 18, 1987, where he was represented by counsel. He did not allege an impairment resulting from high blood pressure at that time. When plaintiff appeared at his two subsequent hearings *pro se,* he demonstrated an understanding of the hearing process and the need to submit medical evidence relevant to his case (T. 31–35). At his hearing before ALJ Dombeck on October 26, 1994, plaintiff testified that he was familiar with the documents being considered in his case. He also submitted additional evidence at the hearing that he said completed the record (T. 34–35). Thus, his *pro se* status is insufficient to provide good cause for failure to present this evidence during any of the proceedings. *See Lisa v. Secretary of Health & Human Servs.,* 940 F.2d 40, 46 (2d Cir.1991).

A claimant's request for reconsideration will be refused where the additional evidence fails to meet any one of the three stated requirements. Accordingly, plaintiff's request to remand the Commissioner's decision must be denied.

### III. Reopening Plaintiff's Prior Applications.

█ Plaintiff claims that his prior applications, which alleged a disability onset date of October 17, 1986, should now be reopened.

The Social Security Act provides that "[a]ny individual, after any final decision of the Secretary made after a hearing ... may obtain a review of such decision by a civil action" within the time allowed by the Secre-

---

4. While the record indicates treatment from 1986 to 1988, and plaintiff's exhibits show that treatment actually occurred from 1987 to 1989, the record adequately reflects the fact that plaintiff was treated for high blood pressure over a two year period.

**474**

tary. 42 U.S.C. § 405(g). A decision may be reopened for any reason within one year of the initial determination or within four years for good cause. 20 C.F.R. § 404.988(a–b). Good cause exists where new and material evidence is furnished, a clerical error occurred in the computation of benefits, or a review of the evidence on which the determination was made shows on its face that an error was made. *Id.* § 404.989. A decision may also be reopened at any time in certain specified circumstances. *Id.* § 404.988(c).

Plaintiff received unfavorable decisions after hearings on both of his prior applications. Those decisions were dated December 4, 1987 and July 3, 1991 (Item 13, Ex. C and T. 172, respectively). Though plaintiff did not explicitly request a reopening of his prior applications when making his third disability claim, ALJ Dombeck treated the new application as an implied request to do so (T. 13). He concluded that the earlier applications could not be reopened because plaintiff testified that he was able to work until January 14, 1992, and it appeared that plaintiff was capable of performing light work until he suffered his stroke on February 20, 1993.

In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that, in the absence of a constitutional claim, judicial review of a decision not to reopen is foreclosed. Because a request to reopen may be denied without a hearing, it is not "a final decision of the [Commissioner] made after a hearing" as provided in the Act. *Id.* at 107, 97 S.Ct. at 985. *See also Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir.1983); *Grant v. Shalala*, No. 93–CV–0124E(F), 1995 WL 322589 (W.D.N.Y. March 13, 1995).

Plaintiff has not requested judicial review of the Commissioner's refusal to reopen. However, he does make allegations of fraud and conspiracy against the Commissioner and others that he claims caused all of his applications to fail. Plaintiff alleges that the Commissioner deliberately left the medical reports of plaintiff's treating physician out of the record and thereby failed to consider his high blood pressure condition. Therefore, this court must consider whether plaintiff's right to a full and fair hearing has been violated. *See Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) citing *Echevarria v. Secretary of Health & Human Serv.*, 685 F.2d 751, 755 (2d Cir.1982) (court must consider whether the ALJ adequately protected the rights of *pro se* plaintiff by ensuring sufficient development and consideration of relevant facts).

Records and a report from Dr. Dubin were included as exhibits in plaintiff's first hearing. However, there is no indication in the Commissioner's record or the plaintiff's exhibits that plaintiff named Dr. Dubin as a treating physician or signed a release form for those medical records in his two subsequent claims. Plaintiff did not allege that, prior to his stroke, his high blood pressure caused him to suffer any impairments limiting his ability to work. Further, Dr. Dubin's records provide no opinion stating that plaintiff was so impaired. In short, plaintiff now makes a medically unsupported claim that he may have been suffering from a hypertension impairment when he submitted his prior applications.

Plaintiff's unsubstantiated allegations of fraud are insufficient to demonstrate any colorable constitutional claim. Accordingly, this court lacks jurisdiction to review the Commissioner's decision not to reopen.

Plaintiff argues that his prior applications should now be reopened based on additional evidence that he recently obtained. A request to reopen for consideration of new evidence must be made within four years of the date of notice of the initial determination. 20 C.F.R. §§ 404.988(b); 404.989. Plaintiff filed this claim on September 25, 1995, more than four years after the determination of either of his prior claims and more than eight years after the alleged onset of disabling hypertension.

Were this court to conclude that plaintiff made an implied request to reopen by filing his third disability application, plaintiff would still be required to show good cause. As determined above, the additional documents plaintiff now offers are not new and material.

Accordingly, plaintiff's request for reopening must be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that the government's motion for judgment on the pleadings (Item 6) be GRANTED, and plaintiff's motion (Item 8) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

SO ORDERED.

DATED: November 13, 1996