Anthony IANNOPOLLO, Plaintiff,

v.

Joanne B. BARNHART, Commissioner of Social Security, Defendant.

No. 02–CV–6245L.

United States District Court, W.D. New York.

Aug. 4, 2003.

Mark M. McDonald, Geneva, NY, for plaintiff.

Brian M. McCarthy, AUSA, United States Attorney, Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Anthony J. Iannopollo ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability insurance ("SSDI") benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). As discussed below, the Court finds that the Commissioner's decision was based on legal error and, accordingly, remands the matter for further administrative proceedings.

### FACTUAL BACKGROUND

Plaintiff Anthony J. Iannopollo was born on September 23, 1956. (T. 23).[1] Claiming that he has been unable to work since October 26, 1999 due to left knee and lower back conditions and a mental impairment, he seeks SSDI benefits. He graduated from high school in 1975 and his previous work experience includes work as a gas station attendant, a newspaper deliverer and a driver for a grocery home delivery service. (T. 91, 104). He applied for SSDI benefits on April 10, 2001, alleging that he was disabled initially by an injury sustained to his left knee on October 26, 1999 while working for the grocery service. (T. 85). Plaintiff underwent arthroscopy on his left knee on October 16, 2000 at the recommendation of his treating physician, Dr. Olaf Lieberg. (T. 154–58, 223–24, 227, 229–31). The post-operative diagnosis was internal derangement[2] of the left knee, synovitis[3] with grade 2 to 3 chondromalacia[4] medial femoral condyle[5], grade 3 to 4 chondromalacia lateral tibial plateau, and grade 3 chondromalacia lateral femoral condyle. (T. 154). An MRI

---

1. "T.____" refers to the page of the transcript of the administrative record filed by the Commissioner with her Answer.

2. "Derangement" is "a disturbance of the regular order or arrangement." *Stedman's Medical Dictionary* 478 (27th ed.2000).

3. An "inflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." *Stedman's Medical Dictionary* 1773 (27th ed.2000).

4. "Softening of any cartilage." *Stedman's Medical Dictionary* 341 (27th ed.2000).

5. "A rounded articular surface at the extremity of a bone." The lateral condyle is longer than the medial condyle in both the femur and tibia. *Stedman's Medical Dictionary* 397 (27th ed.2000).

performed on plaintiff's back on February 9, 2001, again at Dr. Lieberg's request, found mild disc degeneration without evident herniation or stenosis, but mild diffuse disc bulging at L4–5 [6] and mild degenerative changes at L5–S1.[7] (T. 153). Plaintiff also was treated for anxiety attacks by his primary care physician, Dr. Mark Ryan, (T. 123, 125, 127, 137, 139, 142–43), and was assessed at Clifton Springs Hospital and Clinic Behavioral Health Services for dysthymia.[8] (T. 242–58).

Plaintiff's application for SSDI benefits was denied initially and upon reconsideration [9] by the Social Security Administration ("SSA"). (T. 48–52). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on November 13, 2001. (T. 20–47). The ALJ ruled that plaintiff was not entitled to SSDI benefits because he could perform the full range of sedentary work, and denied his claim on January 4, 2002. (T. 10–19). The ALJ's decision became the Commissioner's final decision on April 19, 2002 when the Appeals Council denied plaintiff's request for review. (T. 5–7). Plaintiff commenced this action on May 3, 2002, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Plaintiff filed a motion for judgment on the pleadings, contending that the ALJ erred in finding plaintiff's dysthymia and anxiety, or "mental impairment," to be nonsevere. In addition, plaintiff argues that the ALJ improperly concluded that he could perform the full range of sedentary work because he failed to consider plaintiff's nonexertional limitations and as such, application of medical-vocational rule 201.21 was legal error. Further, plaintiff argues that the ALJ did not properly assess his credibility. In her cross-motion for judgment on the pleadings, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed under 42 U.S.C. § 405(g).

## DISCUSSION

### A. *The Standard for Determining Disability*

A person is "disabled" under the Act when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 404.1505(a). In other words, he is disabled "if his physical or mental impairment is of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

**6.** "L" indicates a particular lumbar vertebrae, located between the ribs and pelvis. *Stedman's Medical Dictionary* 1034 (27th ed.2000).

**7.** "S" indicates a particular sacral vertebrae, or the segment of the vertebral column that forms part of the pelvis. *Stedman's Medical Dictionary* 1588 (27th ed.2000).

**8.** Dysthymia is a "chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." *Stedman's Medical Dictionary* 556 (27th ed.2000).

**9.** The reconsideration denial letter is not in the record, but the ALJ indicates in his decision that reconsideration of the claimant's application did occur. (T. 12).

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" and that "must last or be expected to last for a continuous period of 12 months." 42 U.S.C. § 423(d)(3), 20 C.F.R. §§ 404.1508–.1509.

In determining whether plaintiff was entitled to receive SSDI benefits, the ALJ proceeded through the requisite five-step inquiry. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002) (discussing five-step process delineated in the relevant regulations); 20 C.F.R. § 404.1520. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date, October 27, 1999. (T. 13). Next, the ALJ found that the medical evidence supported a finding that plaintiff's left knee derangement and degenerative back condition were medically determinable impairments. (T. 13). The left knee and back impairments were severe enough in combination to significantly limit plaintiff's ability to do basic work activities, but did not meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (T. 13). Plaintiff also alleged dysthymia and anxiety as further impairments, but the ALJ determined that, although those specific impairments are severe within the meaning of the Regulations, there is no indication that plaintiff's condition is severe or will become such for a twelve-month period as long as plaintiff continues to receive appropriate treatment. (T. 14).

The ALJ proceeded to the fourth step and determined that plaintiff did not have the residual functional capacity ("RFC") to return to his past relevant work. (T. 18). At the fifth and final stage of this process, the burden shifted to the Commissioner "to prove that the claimant is capable of performing 'any other work.'" *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (quoting *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996)). The ALJ applied medical-vocational rule 201.21, and determined that plaintiff could perform the full range of sedentary work.[10] (T. 18–19); 20 C.F.R. pt. 404, subpt. P, app. 2. Thus, the ALJ found plaintiff not disabled under the Act.

### B. *Commissioner's Decision and Standard of Review*

The ALJ determined that plaintiff had the residual functional capacity to perform the full range of sedentary work. (T. 18–19). This RFC represents the *most* work that plaintiff can perform in the workplace. Social Security Ruling 96–9p, 1996 WL 374185, *2 (S.S.A.1996). The ALJ found plaintiff capable of lifting and carrying up to fifteen pounds, standing and/or walking up to two hours in an eight-hour workday, "with appropriate breaks", and sitting for up to six hours in an eight-hour workday, again "with appropriate breaks." (T. 18).

 The Commissioner's decision that plaintiff was ineligible to receive SSDI benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial

---

**10.** Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). Rather, "where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a court cannot substitute its own judgment for that of the Commissioner. *Veino*, 312 F.3d at 586.

 A reviewing court also must independently determine if the Commissioner applied the correct legal standards in finding that plaintiff was not disabled, in weighing the opinion and other evidence, in developing the record, and in promulgating her decision in accordance with the law. *Townley v. Heckler*, 748 F.2d 109, 113 (2d Cir.1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999). "Failure to apply the correct legal standards is grounds for reversal." *Tejada*, 167 F.3d at 773. In this regard, the Court should first review the legal standards applied and then, if the standards were applied correctly, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).

### C. *Issues on Appeal*

Plaintiff contends that the ALJ erred in several respects. Plaintiff argues that his "mental impairment" (the term that plaintiff uses to indicate both his anxiety and dysthymia) is severe and that this impairment, in addition to the postural limitations enumerated by Dr. Lieberg in plaintiff's RFC assessment, creates nonexertional limitations that erode his ability to perform the full range of sedentary work. (T. 160–61). Plaintiff also argues that the ALJ erred in applying the treating physician's rule and in making his credibility determination. As discussed below, I agree with plaintiff and, therefore, remand for further proceedings.

### *Plaintiff's Alleged Mental Impairment*

 The ALJ properly eliminated plaintiff's dysthymia and anxiety as impairments affecting disability.[11] Plaintiff's anxiety and dysthymia cannot be considered as an impairment because neither condition satisfies the twelve-month durational requirement. An impairment "must last or be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1509. The impairment must also render plaintiff unable to engage in substantial gainful activity for the same continuous twelve–month period. Social Security Ruling 82–52, 1982 WL 31376, *1 (S.S.A. 1982); *Barnhart v. Walton*, 535 U.S. 212, 213, 122 S.Ct. 1265, 1266, 1270, 152

---

11. The ALJ also determined that plaintiff's anxiety and dysthymia were not "severe" as defined by 20 C.F.R. § 404.1521(a) (T. 14). If a claimant submits evidence of multiple impairments in his application for SSDI benefits, the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments *without regard to whether any such impairment, if considered separately, would be of sufficient severity.*" 20 C.F.R. § 404.1523 (emphasis added); *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir.1995) (requiring the SSA to "evaluate [the impairments'] combined impact on a claimant's ability to work, regardless of whether every impairment is severe"); *see also Johnson v. Sullivan*, 922 F.2d 346, 350–51 (7th Cir.1990) (en banc) (holding the same; *see generally Fonseca v. Chater*, 953 F.Supp. 467, 472 (W.D.N.Y.1997). The ALJ's error is of no moment, though, in view of the failure of plaintiff to establish that these impairments met the twelve-month durational requirement.

L.Ed.2d 330 (2002) (holding that the Social Security Act requires both the impairment and the subsequent inability to engage in any substantial gainful activity to last twelve months to meet the durational requirement). Further, if "[plaintiff's] concurrent impairments which, when considered in combination, are severe" the ALJ must determine whether the combined effect of those impairments can also be expected to continue in severity for twelve months. 20 C.F.R. § 404.1522(b).

Thus, *each* medically determinable impairment must meet the twelve-month durational requirement before it can be considered as part of a combination of impairments affecting disability. *See* Social Security Ruling 82–52, *1; *Morales v. Bowen,* No. 85–CV–2648, 1988 WL 78375, *3 (S.D.N.Y. July 18, 1988) (holding that an impairment is properly removed from disability analysis if plaintiff cannot prove that the impairment would last for at least twelve consecutive months); *accord Bianchi v. Sec'y of Health and Human Servs.,* 764 F.2d 44, 45 (1st Cir.1985) (holding the same); *Menezes v. Apfel,* No. 99–168–B, 2000 WL 1499491, *7 (D.N.H. May 4, 2000) (stating that "unless an impairment lasts for a continuous period of twelve months, it cannot serve as a basis for a disability determination"); *Pilet v. Apfel,* 20 F.Supp.2d 240, 244–45 (D.Mass.1998) (requiring a mental impairment to be of appropriate duration before considering it in conjunction with other physical impairments during a step two severity analysis).

There is substantial evidence to support the ALJ's finding that plaintiff's mental impairment failed to meet the twelve-month durational requirement and also that these impairments prevented plaintiff from pursuing substantial gainful activity during that period. Plaintiff saw Dr. Ryan, his primary care provider, several times between 1990 and 2001 for anxiety and panic attacks. (T. 123, 126–27, 137, 139, 142–43). However, plaintiff worked until his alleged onset date, October 27, 1999. (T. 79, 86). Therefore, plaintiff's anxiety never prevented him from engaging in substantial gainful activity. After that date, plaintiff's medical records do not indicate that his anxiety or panic attacks prevented him from working. Rather, when panic or anxiety occurred, as in August of 2000, plaintiff took a deep breath and "[felt] ok in a few seconds." (T. 124). He was prescribed Zoloft in May, 2001, which also made him "feel better." (T. 125). In 2001, Dr. Ryan assessed plaintiff's anxiety as "better." (T. 126).

Approximately one month before the hearing, plaintiff was admitted to Clifton Springs Outpatient Mental Health Clinic on October 24, 2001. (T. 242). Sharon Marr, R.N., assessed plaintiff as suffering from dysthymia and schizoid personality, in addition to back and knee pain. (*Id.*). Plaintiff presented with "anxiety/stress" and "depression or mood disorder," and Nurse Marr noted plaintiff's "fixed smile" and "poverty of speech." (T. 245, 248). However, plaintiff failed to submit evidence that this condition was expected or likely to last for the requisite twelve months.

In view of the lack of evidence showing that plaintiff's anxiety and dysthymia both persisted for twelve continuous months *and* prevented him from pursuing substantial gainful activity during that same time, the ALJ correctly excluded plaintiff's anxiety and dysthymia from his disability analysis. *See Bianchi,* 764 F.2d at 45 (removing from the disability analysis plaintiff's left foot condition because it developed just prior to the ALJ's hearing, it was amenable to treatment, and evidence did not exist that it would persist with treatment);

*Pilet,* 20 F.Supp.2d at 245 (affirming the ALJ's decision not to consider plaintiff's depression in his disability analysis, as the condition was neither on-going nor chronic); *see generally Morales,* 1988 WL 78375, at *2–3 (denying plaintiff's request for benefits due to a combination of impairments because neither of the impairments persisted for twelve months nor did they exist concurrently).

### The Treating Physician Rule

 It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000); *see* 20 C.F.R. § 404.1527(d)(2). In determining what weight to give a treating physician's opinion, the ALJ must consider the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the extent of "relevant evidence" presented "to support an opinion," whether the opinion is consistent "with the record as a whole," and whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii) & (d)(3)-(5). The ALJ is also required to articulate his or her "reasons for the weight she assigns to the treating physician's opinion." *Shaw,* 221 F.3d at 134.

Plaintiff was examined by several physicians on a one-time basis. The ALJ erred in this case because he failed to give controlling weight to plaintiff's treating physician, Dr. Lieberg. The ALJ appears to have given equal weight to the opinions of the non-treating physicians, without stating why Dr. Lieberg's opinion should not be accorded controlling weight. In view of Dr. Lieberg's treatment relationship with plaintiff, the length of that treatment and the consistency of his opinion concerning plaintiff's condition, Dr. Lieberg's opinion was entitled to controlling weight, not equal weight with the other physicians.

Dr. Lieberg is an orthopaedic surgeon whose treatment relationship with plaintiff began in 1987. (T. 156, 209). He performed three separate arthroscopies on plaintiff's knees, including one after the alleged onset date (T. 156) and examined plaintiff nineteen times between the alleged onset date and the ALJ's hearing. (T. 154–57, 162–66, 195–99, 212–40). Dr. Lieberg is the only physician (treating or examining) who evaluated plaintiff's back and left knee impairments—the two impairments recognized by the ALJ as creating a "severe" combination for purposes of the disability analysis. (T. 13). Dr. Lieberg examined plaintiff's back repeatedly, ordered an MRI and requested physical therapy for plaintiff's degenerative condition. (T. 153, 160–61, 164–65, 199, 213–14, 216, 220–21, 224, 227). By November 16, 2000, Dr. Lieberg concluded that plaintiff's back condition would "give him a longer disability than his arthroscopy of his left knee" and that his back needed "addressing, since [plaintiff] is not improving." (T. 221).

 It was also legal error for the ALJ to treat the opinions of the examining physicians on par with Dr. Lieberg's opinion. The reports of individual examinations are generally given less weight because they lack the "unique perspective to the medical evidence" that a treating physician's opinion would provide. 20 C.F.R. § 404.1527(d)(2). Drs. Donald Douglas, Jose Lopez, John Devanny, and Steven Hausmann each examined plaintiff once for the insurance companies that insured plaintiff's former employers.[12] Those ex-

---

**12.** Plaintiff received Worker's Compensation from two different employers due to alleged injuries to his left knee that occurred sepa-

aminations were tailored to the status and progress of plaintiff's left knee, not his back. (T. 180–94). Dr. Douglas diagnosed plaintiff with an articular cartilage injury to his left knee, resulting in a moderate partial disability with a guarded prognosis. (T. 181). Dr. Lopez opined that plaintiff had no disability relating to the alleged injury on October 26, 1999, but that surgery was appropriate because Dr. Lopez believed plaintiff also had lateral and medial degenerative tears in his meniscus. (T. 186). Dr. Devanny diagnosed plaintiff with chondromalacia femoral condyles and tibial plateaus, but felt that the condition created a temporary partial disability of a mild degree. (T. 190). Dr. Hausmann diagnosed plaintiff as having a mild and permanent disability in his left knee due to mild degenerative disease, but Dr. Hausmann did not agree that Dr. Lieberg's surgical findings of October 16, 2000 were the result of the alleged injury on October 26, 1999. (T. 193). However, none of these doctors gave an opinion regarding the combination of impairments that the ALJ found was severe.

Further, Dr. Lieberg's assessment of the condition of plaintiff's left knee was consistent with the examinations for the Worker's Compensation claim. Dr. Douglas and Dr. Lopez both agreed that the surgery performed by Dr. Lieberg in October of 2000 was appropriate. (T. 182, 186). Drs. Douglas, Devanny, Hausmann, and Lieberg all agreed that plaintiff's left knee condition post-surgery resulted in a mild to moderate disability. (T. 181, 186, 190, 193, 199, 213). In light of the consistency of Dr. Lieberg's opinion with the other evidence in the record and his lengthy treatment relationship with respect to both of plaintiff's impairments, the Regulations require that Dr. Lieberg's opinion be given controlling weight over that of the other examining physicians. *See* 20 C.F.R. § 404.1527(d)(2); *Shaw,* 221 F.3d at 134; *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir.1999); *Green–Younger v. Barnhart,* 335 F.3d 99, 105 (2d Cir.2003). To not do so is legal error, and requires that the case be reversed. As discussed below, Dr. Lieberg's opinion is consistent with a finding that plaintiff can do less than the full range of sedentary work.

### Dr. Lieberg's RFC Assessment

The ALJ found plaintiff capable of lifting or carrying up to fifteen pounds, standing and/or walking up to two hours in an eight-hour workday, with appropriate breaks, and sitting for up to six hours in an eight-hour workday, again with appropriate breaks. (T. 18). The ALJ also found that plaintiff could perform substantially all of the full range of sedentary work because he had no nonexertional limitations that significantly reduced the number of jobs available to him in the sedentary range of work. (T. 16, 19). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying files and small tools. 20 C.F.R. § 404.1567(a). Further, sedentary work involves sitting, but a certain amount of occasional walking and standing is also necessary in carrying out job duties. *Id.* A nonexertional limitation is a limitation imposed upon plaintiff by his impairment that affects his ability to meet the demands, other than strength, of a job. 20 C.F.R. § 404.1569a(c)(1); *see* Social Security Ruling 96–9p, *5.

As the ALJ recognized, medical opinions that reflect judgments about the "severity of [plaintiff's] impairments and resulting limitations" must be considered "together with the rest of the relevant evidence." (T. 14); *see* 20 C.F.R. §§ 404.1527(a)(2)-(b). Yet the ALJ's determination that

rately on January 6, 1999 and October 26, 1999. (T. 65–75).

plaintiff can perform the full range of sedentary work is inconsistent with Dr. Lieberg's medical opinion. Dr. Lieberg's RFC assessment, dated July 24, 2001, found plaintiff to have several nonexertional impairments that eroded his ability to perform the full range of sedentary work. (T. 160–61). Plaintiff could never climb, stoop, crouch, kneel or crawl. (T. 160). In an eight-hour workday, Dr. Lieberg limited plaintiff's total standing time to two hours, total walking time to two hours and total sitting time to three hours, in essence restricting plaintiff from completing an eight-hour workday. (T. 161). *See* Social Security Ruling 96–9p, *2 (defining the RFC to be the most that an individual can do in an eight-hour workday for five days a week). Plaintiff was also required to alternate between sitting and standing (T. 161). This RFC assessment followed six office visits by plaintiff to Dr. Lieberg in the previous seven months. (T. 163–66, 212–17). On April 20, 2001, Dr. Lieberg determined that plaintiff could do sedentary work that does not involve "prolonged sitting," frequent bending or lifting, or *any squatting or climbing.* (T. 213, emphasis added).

The ALJ failed to explain why he disregarded Dr. Lieberg's RFC assessment regarding plaintiff's limitations. Failure to do so constitutes legal error. *See* 20 C.F.R. § 404.1527(d)(2). Clearly, Dr. Lieberg believed that plaintiff had nonexertional limitations that significantly eroded his ability to perform sedentary work, both in his ability to perform postural activities and his ability to complete an eight-hour workday. (T. 160–61). If plaintiff is completely unable to perform a nonexertional, or postural, activity such as climbing, balancing, kneeling, crouching, or crawling, the occupational base of sedentary work may be significantly eroded such that consultation with a vocational resource may be appropriate to indicate which jobs are still available to plaintiff. *See* Social Security Ruling 96–9p, *8 ("A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply ...."); *Leiter v. Massanari*, No. 01–CV–6075, 2001 WL 1822679, *12 (W.D.N.Y. Nov. 15, 2001) (finding error where the ALJ did not explain why he disregarded treating physician's opinion regarding claimant's inability to stoop, crouch, crawl or kneel). Furthermore, plaintiff's need to alternate between sitting and standing may also present another restriction that erodes the occupational base. *See Battle v. Barnhart*, No. 02–CV–6244L, (W.D.N.Y. dec. Aug. 1, 2003) (and cases cited therein); *see also* Social Security Ruling 96–9p, *7.[13]

When such limitations significantly erode the occupational base, application of the medical-vocational rules, such as rule 201.21, is precluded. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(1) (prevent-

---

**13.** The ALJ did note, perhaps as a justification for his choice to disregard Dr. Lieberg's RFC assessment, an unsuccessful attempt by the Office of Hearings and Appeals to obtain a clarifying report from Dr. Lieberg on October 23, 2001 concerning plaintiff's impairments and an RFC assessment. (T. 15, 240). The ALJ bears an affirmative duty, however, to make every reasonable effort to develop plaintiff's complete medical record. *See* 20 C.F.R. §§ 404.1512(d)-(e). Before the ALJ may reject Dr. Lieberg's RFC assessment as inconsistent with other opinions in the medical record, the ALJ may be required to secure additional evidence and an explanation from Dr. Lieberg, even if plaintiff is represented by counsel. *See Schaal*, 134 F.3d at 505; *Schisler v. Bowen*, 851 F.2d 43, 46–47 (2d Cir. 1988). In this instance, more development of the record, other than the letter that was returned by Dr. Lieberg without explanation, may be necessary. *See Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir.1990).

ing the rules from directing a finding of disability when the claimant has solely nonexertional limitations); *see also Bapp v. Bowen,* 802 F.2d 601, 605 (2d Cir.1986) (barring use of the rules where "the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment"); *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y.1996) (precluding reliance on the rules where the "claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform").

Instead, the testimony of a vocational expert should be obtained to clarify the jobs that plaintiff is capable of performing within the sedentary range of work, given the various nonexertional limitations outlined above. 20 C.F.R. §§ 404.1512(d)-(e); *see Aubeuf v. Schweiker,* 649 F.2d 107, 116 (2d Cir.1981) (remanding the case to obtain the testimony of a vocational expert). The ALJ must cite examples of jobs that plaintiff can perform in the region where he lives when his ability to perform the full range of sedentary work is significantly impacted. Social Security Ruling 96–9p, *5. The testimony of a vocational expert will aid the ALJ by providing examples of appropriate jobs, thereby enabling the ALJ to provide a determination consistent with Dr. Lieberg's RFC assessment. *Id.* at *8 (encouraging consultation with a vocational resource where nonexertional limitations significantly erode the occupational base); *see Lugo v. Chater,* 932 F.Supp. 497, 504 (S.D.N.Y.1996) (remanding for the testimony of a vocational expert based on hypotheticals tailored to plaintiff's medical condition); *Leonovich v. Barnhart,* 246 F.Supp.2d 199, 210 (W.D.N.Y.2003) (recognizing the option of calling a vocational expert); *cf. Kuleszo v. Barnhart,* 232 F.Supp.2d 44, 55 (W.D.N.Y.2002) (weighing the vocational expert's testimony when deciding whether plaintiff's ability to perform the full range of sedentary work was significantly eroded).

### Plaintiff's Credibility

Issues concerning the ALJ's determination concerning plaintiff's credibility need not be resolved at this time on this record in view of the remand on other issues. Credibility determinations are based, in part, on the objective medical evidence and the ALJ's analysis of that evidence. A review of the credibility determination serves no purpose now. *See Martinez v. Massanari,* 242 F.Supp.2d 372, 380 (S.D.N.Y.2003). In light of the remand, the ALJ will need to evaluate plaintiff's complaints anew in view of his re-examination of the medical evidence, as directed by this decision.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision that plaintiff was disabled was based on legal error and therefore is reversed. Defendant's cross-motion for judgment on the pleadings (Dkt.# 10) is denied, and plaintiff's motion for judgment on the pleadings (Dkt.# 4) is also denied. The case is remanded, pursuant to 42 U.S.C. § 405(g), for a rehearing that includes full consideration of Dr. Lieberg's assessment of plaintiff's RFC and the additional testimony of a vocational expert. IT IS SO ORDERED.